UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST BEACH DIVISION

| | | |
|---|---|---|
| PALM BEACH ACCESSORIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| SMITH SPORT OPTICS, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

1.      Plaintiff Palm Beach Accessories, Inc. ("Plaintiff") brings this action against Smith Sport Optics, Inc. ("Defendant") to stop Defendant's interference with Plaintiff's lawful reselling of genuine eyewear products. Defendant has been submitting knowingly false trademark takedowns to Amazon that falsely accusing Plaintiff of trademark infringement, which has resulted in the wrongful removal of Plaintiff's legitimate resales of eyewear products, causing significant financial loss, reputational harm, and jeopardizing Plaintiff's ongoing business relationship with Amazon.

2.      Plaintiff is seeking damages and injunctive relief enjoining Defendant from engaging in tortious interference with Plaintiff's lawful business and product listings, unlawfully disrupting Plaintiff's commercial relationships and suppressing fair competition. Plaintiff also seeks a declaration that its product listings do not infringe any intellectual property rights of Defendant and seeks relief for Defendant's acts constituting false advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), fraud under Florida common law, unfair competition under Florida common law, deceptive and unfair trade practices under Fla. Stat. §

501.201 *et seq*., defamation under Florida common law, and business disparagement under Florida common law.

## NATURE AND SUMMARY OF THE ACTION

3.     This case arises from Defendant's unlawful and bad faith campaign to suppress competition by interfering with Plaintiff's resale of genuine Smith products.

4.     Plaintiff lawfully acquired authentic Smith eyewear and resold it through Amazon, using only the amount of branding necessary to identify the products. Such conduct is protected under at least the first sale doctrine, the exhaustion doctrine, and nominative fair use.

5.     Despite knowledge that Plaintiff was reselling genuine Smith eyewear and knowing Plaintiff's resale rights, Defendant submitted knowingly false and malicious takedown notices to Amazon, falsely alleging that Plaintiff's product listings for Smith products infringed Defendant's trademark rights.

6.     Defendant's takedown notices resulted in the removal of Plaintiff's valid listings, causing substantial financial and reputational harm and threatening the viability of Plaintiff's Amazon seller account.

7.     Defendant's actions are not only commercially abusive but also legally indefensible.

8.     Defendant's conduct constitutes false advertising and false designation of origin under the Lanham Act, tortious interference with business relations, fraud, unfair competition, deceptive trade practices, defamation, and business disparagement.

9.     Defendant has refused to retract its false takedown notices or cease its unlawful conduct, leaving Plaintiff no choice but to seek judicial relief.

## THE PARTIES

10.     Plaintiff is a corporation organized under the laws of Florida, with its principal place of business at 601 Jim Moran Blvd., Deerfield Beach, Florida 33442.

11.     Upon information and belief, Defendant Smith Sport Optics, Inc. is a corporation organized under the law of Delaware with a place of business at 220 SE Martin Luther King Jr. Blvd., Portland, Oregon 97214.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 2201 because the action arises under the federal Lanham Act and Sherman Act, and Plaintiff seeks declaratory relief.

13.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court has supplemental jurisdiction to hear and determine the state law claims, which arise under the statutory and common law of the state of Florida, pursuant to 28 U.S.C. § 1367(a), because the state law claim are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

15.     Venue and personal jurisdiction are proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

16.     This Court has personal jurisdiction over Defendant. Defendant's connections with the state of Florida are continuous and systematic. For instance, Defendant's website includes a store locator option that shows approximately 300 different store locations in Florida to purchase

Defendant's products. *See* https://www.smithoptics.com/en_US/store-locator.html. Therefore, Smith has a presence in and/or regularly conducts business with Florida residents. In addition, and upon information and belief, this action is based on activities that arise out of or relate to Defendant's actions directed to Florida, i.e., Defendant has purposefully directed its activities that form the basis of this action toward the state of Florida, knowing that its actions would cause harm in the state of Florida. Plaintiff also suffered its injury and was harmed in this district, as its Florida business was directly harmed by Defendant's actions, and Defendant knew that Plaintiff operated from and was based in Florida.

## STATEMENT OF FACTS

### A.    Plaintiff's Lawful Listings Reselling Genuine Smith Products

17.    Plaintiff is in the business of lawfully acquiring and reselling various genuine eyewear products, including sunglasses, reading glasses, prescription eyeglasses, and specialty eyewear.

18.    Plaintiff resells products through various channels, including through its seller account on Amazon.com ("Amazon").

19.    Since its formation, Plaintiff has served millions of customers through its Amazon storefront, averaging over 20,000 orders per month.

20.    Plaintiff lawfully acquired genuine Smith products and listed them for resale on Amazon.

21.    Defendant's Smith products are not readily identifiable without use of the Smith name, and Plaintiff's listings do not use more than what is necessary of the Smith name to identify the genuine products.

22.    Plaintiff's listings that resell lawfully purchased, genuine Smith products are permitted under at least the first sale doctrine, exhaustion doctrine, and nominative fair use.

4

23.     The Smith products sold by Plaintiff were, at all times and continue to be, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

**B.     Amazon Marketplace**

24.     Upon information and belief, Amazon is U.S.'s largest online retailer.

25.     Amazon's online e-commerce platform allows third parties, like Plaintiff, to sell products on its e-commerce platform.

26.     Customers, including consumers in this district, rely on third-party sellers, like Plaintiff, for product availability and competitive pricing.

27.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to U.S.'s marketplace on a scale that no other online retailer can currently provide.

28.     At all relevant times, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

29.     Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product.

30.     A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

31.     Once Plaintiff acquires genuine products from reputable sources, it resells the same products on Amazon at a profit.

32.     Plaintiff has invested significant resources and effort into building a successful and reputable Amazon storefront.

33.     Any harm that comes to the relationship between Plaintiff and Amazon creates added risk for serious and irreparable injury to Plaintiff.

**C.     Defendant's Unlawful and Fraudulent Takedowns of Plaintiff's Product Listings**

34.     Defendant is in the business of selling eyewear products, including at least sunglasses, prescription eyeglasses, and specialty eyewear.

35.     Upon information and belief, Defendant seeks to increase its profits by controlling the distribution and pricing of Smith branded products through unlawful means.

36.     On or about June 13, 2025, Defendant submitted takedown notices to Amazon falsely alleging trademark infringement by Plaintiff, resulting in the removal of Plaintiff's valid product listings.

37.     Defendant knew that Plaintiff was a Florida resident and that the submission of the takedown notices was intended to and would result in the removal of Plaintiff's listings.

38.     Defendant's takedown notices were knowingly false, malicious, and intended to suppress lawful competition and disrupt Plaintiff's commercial operations.

39.     Defendant was misusing its trademark to submit false takedown notices with Amazon to falsely allege that Plaintiff's postings infringe Defendant's trademark, when Defendant knows they do not.

40.     Relying on Defendant's false statements, Amazon did remove Plaintiff's valid product listings reselling genuine Smith products.

41.     Defendant's false takedown notices damaged and continue to damage Plaintiff's reputation and threatens the suspension or termination of Plaintiff's Amazon seller account, which would irreparably harm Plaintiff and its ability to conduct business.

42.     Upon information and belief, Defendant has engaged in a course of conduct designed to preclude certain third parties such as Plaintiff from reselling genuine Smith products on online marketplaces by false allegations of intellectual property infringement.

43.     Upon information and belief, the purpose of these false complaints and defamatory statements was to knowingly prevent Plaintiff from selling genuine Smith products on Amazon.

44.     Upon information and belief, the purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

45.     In addition to disrupting Plaintiff's business operations, Defendant's actions have also caused other competitive harms including reducing consumer choice and availability of Smith products at competitive prices, including to consumers in this district.

46.     Defendant's actions have also created artificial barriers to entry for other resellers while preserving Defendant's ability to control pricing and distribution of Smith products without competitive checks.

47.     Because Plaintiff sells only genuine Smith products through its Amazon storefront, Defendant has no legitimate intellectual property claim(s) against Plaintiff.

48.     Under the first sale doctrine, Plaintiff is lawfully permitted to resell Smith products without violating the intellectual property rights or other legal rights of Defendant.

49.     The first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regards to resellers, so long as the reseller is selling authentic, unaltered products.

50.     Defendant was aware that Plaintiff sold genuine Smith products on Amazon.

51.     Defendant was also aware of Plaintiff's rights to resell these genuine Smith products. Despite this knowledge, Defendant submitted false takedown notices with Amazon.

52.     At no time has Defendant expressed any concern to Plaintiff that Plaintiff is not selling genuine Smith products.

53.     On information and belief, each complaint or takedown notice submitted to Amazon was signed under penalty of perjury by an employee or agent of Defendant.

54.     Defendant's takedown notices were objectively unreasonable sham submissions made in bad faith to prevent Plaintiff's resale of genuine Smith products on Amazon's e-commerce platform.

55.     Upon information and belief, Defendant knew that complaints to Amazon would put Plaintiff in jeopardy of a suspension of its Amazon seller account, which would result in immediate and irreparable harm to Plaintiff.

56.     Defendant's false complaints have resulted in Plaintiff's listings reselling genuine Smith products being removed from Amazon.

57.     As a result of Defendant's false complaints, Plaintiff's performance metrics for its Amazon seller account were and continue to be irreparably damaged.

58.     Defendant's conduct has caused and continues to cause substantial financial harm to Plaintiff, including lost revenue, business disruption, reputational damages, and the risk of further commercial injury.

59.     Defendant's unlawful conduct also led to Amazon shipping all the Smith products from the removed listings back to Plaintiff from Amazon's distribution center, at Plaintiff's expense. This included thousands of units of products at a high cost to Plaintiff.

**D.      Plaintiff's Attempts To Amicably Resolve This Matter**

60.      On July 16, 2025, Plaintiff sent a letter to Defendant putting Defendant on written notice that its complaints to Amazon were baseless and demanded that Defendant retract the takedown notices and cease further interference.

61.      Despite several communications between the Parties, Defendant has refused to comply with Plaintiff's demands, including refusing to retract the false and improper takedown notices.

62.      On September 27, 2024, Plaintiff and Defendant entered into a Confidential Settlement Agreement and Release ("Settlement Agreement"), executed to resolve a prior dispute between the parties, which was limited to issues concerning amounts allegedly owed by Plaintiff to Defendant for genuine Smith products that Plaintiff had purchased for resale.

63.      The Settlement Agreement only released conduct before its Effective Date, which was until September 27, 2024.

64.      Defendant's refusal to retract the takedown notices, despite being presented with clear evidence of Plaintiff's lawful resale rights, demonstrates willful and bad-faith conduct.

65.      Defendant's continued enforcement against Plaintiff's Amazon listings have caused and continue to cause substantial harm to Plaintiff's business, including lost revenue, shipping costs for the returned products, reputational damage, and disruption of its commercial relationships.

## COUNT I
## FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

66.      Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

67.     Defendant submitted takedown notices to Amazon falsely asserting that Plaintiff's product listings for Smith products infringed Defendant's trademark rights and involved unauthorized goods.

68.     These statements were materially false and misleading, as Plaintiff's listings involved the legitimate resale of genuine, lawfully acquired Smith products, the resale of which is protected under at least the first sale doctrine, exhaustion doctrine, and nominative fair use.

69.     Defendant's false representations were made in interstate commerce and were intended to mislead Amazon and customers into believing that Plaintiff's product listings were not for genuine or authorized Smith products.

70.     Defendant's false representations were intended to and did influence Amazon's decision as to whether to do business with Plaintiff and, as a result of Defendant's actions, Amazon removed Plaintiff's product listings.

71.     Defendant's conduct constitutes false advertising and false designation of origin under the Lanham Act, 15 U.S.C. 1125(a), as it misrepresents the nature, characteristics, and origin of Plaintiff's goods and has caused confusion, mistake, or deceit in others as to the commercial activities of Plaintiff.

72.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and is continuing to suffer actual damages, including lost revenue, costs for returned products, reputational harm, and disruption of its Amazon seller account.

73.     Plaintiff has suffered injury, and unless Defendant is enjoined from such activity, will continue to suffer injury.

74.     Plaintiff is entitled to injunctive relief, compensatory damages, disgorgement of Defendant's profits, and recovery of attorneys' fees and costs.

## <u>COUNT II</u>
## DECLARATORY JUDGMENT (NO TRADEMARK INFRINGEMENT)

75.     Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

76.     Defendant manufactures and distributes Smith products and places such products into the stream of commerce.

77.     Plaintiff stocks, displays, and resells new, genuine Smith products.

78.     Upon information and belief, Defendant submitted complaints to Amazon falsely stating that Plaintiff's product listings for Smith products infringed Defendant's trademark rights.

79.     Plaintiff's product listings do not infringe Defendant's rights.

80.     Plaintiff's product listings are protected by at least the first sale doctrine, exhaustion doctrine, and nominative fair use and therefore any use of the SMITH mark(s) or other of Defendant's marks do not constitute trademark infringement.

81.     Defendant's false complaints resulted in the removal of certain of Plaintiff's product listings and put Plaintiff's Amazon seller account in jeopardy of temporary or permanent suspension of all selling privileges. Defendant's actions have and will cause extraordinary, irreparable, and untold damage on Plaintiff as Amazon is virtually the exclusive business of selling products on e-commerce platforms.

82.     Under these facts, an actual controversy exists between Plaintiff and Defendant.

83.     Plaintiff is entitled to a declaratory judgment that its product listings reselling genuine Smith products do not infringe Defendant's trademarks or any other intellectual property rights of Defendant. Plaintiff is also entitled to injunctive relief.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

84.     Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

85.     Plaintiff maintains an ongoing and valuable business relationship with Amazon, including active product listings and sales of genuine Smith products to Amazon customers.

86.     Plaintiff is also in a contractual relationship with Amazon.

87.     At all relevant times, Defendant was aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

88.     At all relevant times, Defendant was aware that Plaintiff's product listings lawfully resold genuine Smith products, as acknowledged in the Parties' Settlement Agreement and through prior communications regarding Plaintiff's rights under the first sale and exhaustion doctrines.

89.     Defendant intentionally and without justification submitted false and malicious trademark takedown notices to Amazon, falsely claiming that Plaintiff's listings infringed Defendant's trademark rights.

90.     Defendant's submissions were made in bad faith and with the intent to disrupt Plaintiff's business operations and suppress lawful competition.

91.     As a direct result of Defendant's actions, Amazon removed Plaintiff's valid product listings, thereby disrupting Plaintiff's ability to conduct business.

92.     Defendant's false takedown notices also damaged and continue to damage Plaintiff's reputation and threatens the suspension or termination of its seller account, which would immediately and irreparably harm Plaintiff and its ability to conduct business.

93.     As an Amazon seller itself, Defendant had actual knowledge that its false claims of infringement would cause, or were at least likely to cause, Amazon to suspend Plaintiff's ability to sell certain products on Amazon.

94.     As an Amazon seller itself, Defendant had actual knowledge that its false claims of infringement could result in a temporary or permanent suspension of Plaintiff's seller account and Plaintiff's ability to sell any products on its Amazon storefront.

95.     Defendant's false accusations of infringement, made directly to Amazon, were for the improper purpose of suppressing competition.

96.     Defendant's actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listings of Smith products to be suspended.

97.     Defendant's actions interfered with Plaintiff's business relationship with Amazon and its Amazon storefront seller metrics, which could lead to the suspension of Plaintiff's selling privileges and shutting down its account, which is a substantial part of its business.

98.     Plaintiff has suffered injury, and unless Defendant is enjoined from such activity, will continue to suffer injury.

99.     Defendant's interference caused substantial financial harm to Plaintiff, including lost revenue, costs for returned products, business disruption, reputational damages, and the risk of further commercial injury.

100.    Plaintiff is entitled to compensatory and punitive damages, injunctive relief, and attorneys' fees.

## COUNT IV
## FRAUD

101.    Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

102.     On or about June 13, 2025, Defendant submitted takedown notices to Amazon falsely asserting that Plaintiff infringed Defendant's trademark rights by listing genuine Smith products for resale.

103.     These statements were materially false and misleading, as Plaintiff's listings are reselling lawfully acquired goods protected under the first sale and exhaustion doctrine.

104.     Defendant knew these statements were false and misleading, and knew that Plaintiff was selling genuine Smith products.

105.     At no time has Defendant expressed concern to Plaintiff that Plaintiff is not selling genuine Smith products, nor is Plaintiff doing so.

106.     Defendant knew its statements were false at the time they were made as Defendant had acknowledged Plaintiff's resale rights in the Parties' Settlement Agreement and has been repeatedly informed of the legal protection afforded to Plaintiff's listings under the first sale doctrine, exhaustion doctrine, and nominative fair use.

107.     Defendant submitted false takedown notices with the intent that Amazon would rely on them to remove Plaintiff's listings, thereby eliminating legitimate competition and disrupting Plaintiff's business operations.

108.     As a direct result of Defendant's fraudulent conduct, Plaintiff suffered substantial damages, including lost revenue, costs for returned products, reputational harm, disruption of its Amazon seller account, and the cost of restoring its listings.

109.     Plaintiff is entitled to compensatory and punitive damages, injunctive relief, and attorneys' fees.

## <u>COUNT V</u>
## UNFAIR COMPETITION

110.    Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

111.    Plaintiff lawfully acquired and resold genuine Smith products through Amazon.

112.    Plaintiff's activities are protected under the first sale doctrine, the exhaustion doctrine, and nominative fair use, and were expressly acknowledged in a prior Settlement Agreement between the parties.

113.    Defendant engaged in a pattern of unfair and anticompetitive conduct by submitting knowingly false and baseless trademark takedown notices to Amazon which falsely claimed that Plaintiff's listings infringed Defendant's trademark rights, despite Defendant's knowledge that the products were genuine and lawfully resold.

114.    Defendant's actions were intended to and do suppress lawful competition by eliminating Plaintiff's presence on Amazon and disrupting Plaintiff's commercial operations.

115.    Defendant's conduct was aimed not at protecting legitimate trademark rights but at gaining an unfair advantage in the marketplace by removing a lawful competitor.

116.    As a direct result of Defendant's unfair competition, Plaintiff's product listings were removed from Amazon, causing lost sales, costs for returned products, reputational damage, and disruption of Plaintiff's business relationships.

117.    Plaintiff also faces the risk of account suspension or termination of its Amazon seller account, which would irreparably harm Plaintiff and its ability to conduct business.

118.    Defendant's conduct constitutes unfair competition under the Florida common law. Plaintiff

119.   Plaintiff is entitled to preliminary and permanent injunctive relief, compensatory and punitive damages, disgorgement of Smith's profits derived from the unlawful conduct, and recovery of attorneys' fees and costs.

### COUNT VI
### VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201 *et seq.*

120.   Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

121.   Plaintiff is a Florida-based business engaged in the lawful resale of genuine Smith products. As a Florida entity, Plaintiff is entitled to the protections afforded under the Florida Deceptive and Unfair Trade Practices Act.

122.   Defendant engaged in deceptive and unfair trade practices by submitting knowingly false and misleading trademark takedown notices to Amazon, falsely asserting that Plaintiff's listings infringed Defendant's trademark rights.

123.   Defendant actions were intended to and did suppress lawful competition and misrepresent the scope of Defendant's trademark rights.

124.   Defendant's conduct occurred in the context of commercial activity, specifically in the online marketplace for sales of eyewear and accessories.

125.   Defendant's false takedown notices were submitted to Amazon, a commercial platform, with the intent to interfere with Plaintiff's business operations and gain a competitive advantage.

126.   As a direct result of Defendant's deceptive and unfair conduct, Plaintiff suffered actual damages, including the removal of valid product listings, lost sales, costs for returned products, reputational harm, and disruption of its Amazon seller account. Plaintiff is entitled to these damages along with its attorneys' fees and injunctive relief.

## COUNT VII
**DEFAMATION**

127.  Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

128.  Defendant submitted takedown notices to Amazon falsely asserting that Plaintiff infringed Defendant's trademark rights by listing infringing, counterfeit, or unauthorized products.

129.  Defendant's statements were false, as Plaintiff's listings resold genuine, lawfully acquired Smith products as protected under at least the first sale and exhaustion doctrines.

130.  Defendant's false statements were published to Amazon, a third party, through formal takedown notices and other communications not yet known.

131.  Defendant's communications with Amazon were intended to induce Amazon to remove Plaintiff's product listings.

132.  Relying on Defendant's false statements, Amazon did remove Plaintiff's valid product listings.

133.  Defendant acted with actual knowledge of the falsity of its statements or, at least with reckless disregard for the truth.

134.  Defendant's statements falsely imputed unlawful conduct to Plaintiff in a commercial context, suggesting that Plaintiff was engaging in trademark infringement. These statements are defamatory per se, as they directly attack Plaintiff's business integrity and reputation in the marketplace.

135.  As a direct result of Defendant's defamatory conduct, Plaintiff suffered significant commercial harm, including removal of valid listings, loss of sales, reputational damage, and harm to its seller metrics for its Amazon seller account.

136.  Plaintiff is entitled to monetary damages for lost revenue, costs for returned products, and reputational harm, punitive damages for willful misconduct, injunctive relief to prevent further false statements and takedown abuse, and recovery of attorneys' fees and costs.

**COUNT VIII**
**BUSINESS DISPARAGEMENT UNDER FLORIDA COMMON LAW**

137.  Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

138.  Defendant published false statements to Amazon, a third party, asserting that Plaintiff's product listings infringed Defendant's trademark and involved counterfeit or unauthorized goods.

139.  Defendant's statements were specific, factual, and capable of being proven false.

140.  Defendant's statements concerned the authenticity and legality of Plaintiff's business operations and product listings, and were not mere opinion.

141.  These statements were published to Amazon and were intended to induce Amazon to remove Plaintiff's product listings and damage Plaintiff's commercial reputation and business.

142.  Defendant knew or reasonably should have known that these falsehoods were likely to induce Amazon to cease doing business with Plaintiff, including removing Plaintiff's product listings and threatening suspension of Plaintiff's Amazon seller account.

143.  Defendant's statements were false and made with actual knowledge of their falsity or with reckless disregard for the truth.

144.  Defendant's false statements played a material and substantial role in inducing Amazon to remove Plaintiff's listings and disrupt Plaintiff's business operations.

145.  As a direct and proximate result of Defendant's false takedown notices, Plaintiff suffered damages, including lost revenue, costs for returned products, diminished business opportunities, reputational harm, and expenses incurred to counteract the false statements.

146.  Defendant's statements disparaged the quality and authenticity of Plaintiff's product listings and directly harmed Plaintiff's business relationships and commercial standing.

147.  Defendant's conduct constitutes business disparagement under Florida common law.

148.  Plaintiff is entitled to compensatory and punitive damages, injunctive relief, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and against Defendant as follows:

A.      Finding that Defendant's conduct constitutes false advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a);

B.      Declaring that Plaintiff has not infringed any of Defendant's trademark rights or any other intellectual property of Defendant;

C.      Finding that Defendant's conduct constitutes tortious interference with business relations;

D.      Finding that Defendant's conduct constitutes fraud;

E.      Finding that Defendant's conduct constitutes unfair competition;

F.      Finding that Defendant's conduct violates the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*;

G.      Finding that Defendant's conduct constitutes defamation;

H.      Finding that Defendant's conduct constitutes business disparagement under Florida common law;

I.      Award Plaintiff his actual damages against Defendant in an amount to be determined at trial;

J.      Award Plaintiff disgorgement of Defendant's profits relating to these torts in an amount to be determined;

K.      Award Plaintiff punitive damages against Defendant in an amount to be determined at trial;

L.      Award Plaintiff with pre- and post-judgment interest at the maximum legal rate and costs;

M.      Preliminarily and permanently enjoin Defendant, its predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, those acting in privity or concert with them, or on their behalf, from:

    i.      Claiming to Amazon, or other third-parties, that Plaintiff's product listings reselling genuine Smith products are infringing any of Defendant's trademarks;

    ii.     Attempting to remove or takedown Plaintiff's product listings reselling genuine Smith products;

    iii.    Otherwise interfering with Plaintiff's business, business relationships, product listings, or other lawful activities; and

    iv.     Doing and engaging in any of the acts described above and directing Defendant to confirm compliance with each and every provision of this prayer for relief;

N.      Awarding Plaintiff costs and reasonable attorneys' fees incurred in bringing this action; and

O.      Granting any other relief that the Court deems just and proper.

Dated: August 21, 2025

FOX ROTHSCHILD LLP

*/s/Adam Wolek*
Adam Wolek (Fla. Bar No. 1033265)
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Phone: (561) 835-9600
Fax: (561) 835-9602
awolek@foxrothschild.com

Clarissa Sullivan (Fla Bar No. 1048526)
Fox Rothschild LLP
Two Commerce Street
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Phone: (215) 299-2000
Fax: (215) 299-2150
csullivan@foxrothschild.com

*Attorneys for Plaintiff*
*Palm Beach Accessories, Inc.*